## STONE & CO. *v.* UNITED STATES (No. 1628).[1]

1. CONSTRUCTION—PARAGRAPHS 324 AND 326, TARIFF ACT OF 1913.

   Paragraph 324, tariff act of 1913, calling for certain kinds of paper, "by whatever names known," includes typewriter paper of such kinds and prevents it from being dutiable as typewriter paper under paragraph 326.

2. EVIDENCE—COLLECTOR'S CLASSIFICATION PRESUMPTIVELY CORRECT.

   There is not sufficient evidence in this record to overcome the presumed correctness of the collector's classification of the merchandise as imitation parchment paper under paragraph 324, tariff act of 1913, and not as typewriter paper under paragraph 326.

United States Court of Customs Appeals, May 23, 1916.

APPEAL from Board of United States General Appraisers, Abstract 38462.

[Affirmed.]

*Lester C. Childs* for appellants.

*Bert Hanson,* Assistant Attorney General (*John J. Mulvaney,* special attorney, of counsel), for the United States.

---

[Oral argument Apr. 27, 1916, by Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The importation in this case consists of paper. It was classified by the collector as imitation parchment paper under paragraph 324 of the act of 1913. The protest claims the assessment should be made under paragraph 326 and the importation classified as typewriter or imitation onionskin paper.

Paragraph 324 provides for "grease-proof and imitation parchment papers which have been supercalendered and rendered transparent or partially so, by whatever name known, all other grease-proof and imitation parchment papers, not specially provided for in this section, by whatever name known."

Paragraph 326 provides for "typewriter, and onionskin and imitation onionskin papers calendered or uncalendered."

Testimony was offered by the importers before the Board of General Appraisers, and the protest was overruled. On appeal the contention of the importers is that the board failed to follow the testimony adduced in the case. The decision of the board was as follows:

The proof offered is wholly insufficient to substantiate the claims alleged in the protest and does little more than to establish that the paper in question is principally used as a manifold paper. The fact that the importers' witness states that it might be called onionskin paper does not establish it as a fact.

The appellant in his brief says:

We will not take into consideration the question as to whether it is or is not onion skin paper, but we do insist that this testimony (previously quoted in the brief), which is that of a thoroughly competent witness and undisputed, specifically proves, in the first place, that it is a kind of paper, in the second place, that it is principally used in a typewriter and in connection with typewriting, and that therefore if it comes under any phase of the law it is under paragraph 326, which covers typewriter paper.

The testimony relied upon to prove this fact, which is quoted in the brief of counsel, is as follows:

Q. Do you know of your own knowledge what this particular paper is used for?— A. Used as a manifold paper typewriting back of a carbon to make manifold copies.
Q. Is that its principal use?—A. It is.

This testimony, as contended by the importers, clearly tends to show that the paper in its use is typewriter paper, but the two paragraphs present a contrast between the *eo nomine* designation of typewriter papers and "grease-proof and imitation parchment papers which have been supercalendered and rendered transparent or partially so, by whatever name known." It would seem to be an essential part of the importers' case, therefore, to exclude the papers in question from the language just quoted, for this language is comprehensive enough to include paper which might be known as type-

writer paper.   The importers started on the line of making this proof by their witness and asked these questions:  ,

Q. Are you familiar with parchment paper and imitation parchment?—A. Yes.
Q. Are you familiar with typewriter paper?—A. Yes.
Q. With onionskin paper?—A. Yes.
Q. Do you know and can you tell the difference between parchment paper and imitation paper and the paper here in question?—A. Yes.
Q. How?—A. Apply the different tests, the grease test.

This is followed by a statement of the use of this paper as manifold paper typewriting back of a carbon to make manifold copies, and the question as to whether this paper is or is not an imitation parchment paper seems to have been dropped.

It is quite possible that an imitation parchment paper may be generally used as a typewriter paper.   But even so, in view of the broad provisions of paragraph 324, it would be dutiable thereunder.

We can gather from an inspection of the samples no information which justifies us in reversing the conclusion of the board.   The paper, so far as we can judge, appears to be partially grease proof. The characteristics of imitation parchment paper are discussed in Germania Importing Co. v. United States (4 Ct. Cust. Appls., 29; T. D. 33221).

The decision of the board is *affirmed*.